**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1044-WJM-STV

DANIEL R. GOODWIN,

      Plaintiff,

v.

NATIONAL ELECTRICAL ANNUITY PLAN,
CAROL SMITH CHAMBERS, and
QUINN ELIZABETH GOODWIN,

      Defendants.

and

NATIONAL ELECTRICAL ANNUITY PLAN,

      Crossclaim Plaintiff,

v.

QUINN ELIZABETH GOODWIN,

      Crossclaim Defendant.

and

CAROL SMITH CHAMBERS,

      Counterclaim Plaintiff,

v.

DANIEL R. GOODWIN,

      Counterclaim Defendant.

---

**ORDER ADOPTING IN PART AND MODIFYING IN PART AUGUST 26, 2021
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on United States Magistrate Judge Scott T. Varholak's August 26, 2021 Report and Recommendation ("Recommendation") (ECF No. 151), that the Court grant Plaintiff Daniel R. Goodwin's Motion for Summary Judgment on Claim One (ECF No. 98), deny as moot Plaintiff's Motion for Judgment on the Pleadings as to Claim One (ECF No. 147), deny Defendant National Electrical Annuity Plan's ("NEAP") Motion for Summary Judgment (ECF No. 70) as to Claim One and deny that motion without prejudice as to the Crossclaim, deny without prejudice Defendant NEAP's Motion for Default Judgment as to the Crossclaim (ECF No. 69), deny Plaintiff's Motion for Summary Judgment as to Claim Two (ECF No. 92), deny Plaintiff's Motion for Judgment on the Pleadings (ECF No. 145), deny Defendant Carol Smith Chambers' Motion for Summary Judgment as to Claim Two (ECF No. 93), and deny Plaintiff's Motion to Dismiss Counterclaim (ECF No. 117).  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Defendant NEAP filed an Objection to the Recommendation on September 6, 2021 (ECF No. 152), and Plaintiff filed "Motion of Summary Judgment Briefing" on September 15, 2021, which the Court construes as an Objection (ECF No. 155).  For the following reasons, Plaintiff's Objection is overruled, Defendant NEAP's Objection is sustained in part and overruled in part, and the Recommendation is adopted in part and modified in part.

## I. BACKGROUND[1]

Defendant NEAP is a multiemployer employee benefit plan as defined by the
Employee Retirement Income Security Act of 1974 ("ERISA").  (ECF No. 70 at 2 ¶ 1.)
Defendant NEAP is funded by employer contributions, which are held in individual
accounts for the benefit of covered employees upon their retirement.  (*Id.* ¶ 2.)  Its rules
for the payment of benefits are set forth in the NEAP Plan of Benefits and NEAP's
Summary Plan Description.  (*Id.* ¶ 3.)

Plaintiff is a participant in a NEAP plan; as of July 1, 2019, Plaintiff had a NEAP
account valued at approximately $548,000.  (*Id.* at 3 ¶ 4.)

On or about March 26, 2019, Defendant NEAP received a power of attorney form
executed by Plaintiff (the "POA"), which designated Plaintiff's daughter, Defendant
Goodwin, as his agent.  (*Id.* ¶¶ 5–6.)  Specifically, the POA granted Defendant Goodwin
"general authority" over a variety of subjects, including "retirement plans"; however, the
POA also contained the following "Special Instructions" that provided:

> This Document is Authorized National Electrical Annuity Plan
> to Withdraw and Deposit in the Authority of Quinn Elizabeth
> Goodwin the Sum of 50,000.00 in the Bank of Quinn E
> Goodwin's Choice . . . Funds to be used on Legal
> Expen[s]es[.]  Further Contributions to Quinn E Goodwin will
> be A[u]thorized in writing by Daniel R Goodwin or Full
> Balance Distributed to Quinn Goodwin upon Daniel
> Goodwin's Death.

(*Id.* ¶¶ 7–8; ECF No. 59-2 at 13.)

---

[1] The following factual summary is based on the parties' Motions and documents
submitted in support thereof.  These facts are undisputed unless attributed to a party or source.
All citations to docketed materials are to the page number in the CM/ECF header, which
sometimes differs from a document's internal pagination.

On April 4, 2021, Defendant NEAP notified Defendant Goodwin by telephone that partial withdrawals are not permitted by the NEAP Plan of Benefits.  (ECF No. 70 at 3 ¶ 9.)  It also sent a letter to Plaintiff's address-on-file explaining that partial withdrawals are not permitted.  (*Id.* ¶ 10.)  Thereafter, on April 5, 2019, Defendant Goodwin spoke with a NEAP representative on the phone about withdrawal options and explained that Plaintiff was incarcerated and that future correspondence should be addressed to her in accordance with the POA.  (*Id.* ¶ 11.)  On April 15, 2019, Defendant NEAP sent Defendant Goodwin a withdrawal application packet.  (*Id.* at 4 ¶ 12.)

On April 22, 2019, Defendant Goodwin contacted Defendant NEAP and stated that Plaintiff wanted his account to be rolled over into a Roth IRA and inquired whether the IRA could be placed in Defendant Goodwin's name.  (*Id.* ¶ 13.)  She was informed that, pursuant to NEAP's rules, Plaintiff's account balance could only be rolled over into an IRA in Plaintiff's name.  (*Id.*)

On May 13, 2019, and June 18, 2019, Defendant Goodwin discussed the lump sum withdrawal option with a NEAP representative; she was notified that, under NEAP rules, a lump sum check would be issued in Plaintiff's name, rather than her name, to comply with ERISA's anti-assignment rule.  (*Id.* ¶¶ 15–16.)

On June 26, 2019, Defendant Goodwin submitted a Normal Benefit Application to Defendant NEAP, requesting a lump sum distribution of $532,000 from Plaintiff's account.  (*Id.* at 5 ¶ 17; ECF No. 59-2 at 25–34.)  Plaintiff did not sign the application. (ECF No. 59-2 at 33–34.)

On August 28, 2019, Defendant NEAP sent a letter addressed to Plaintiff in the care of Defendant Goodwin, notifying Plaintiff that his Normal Benefit Application had

been approved and that a check in the amount of $438,905.57—$538,631.96 less $109,726.39 withheld for federal income taxes—would be issued at the end of the month.  (*Id.* ¶ 18; ECF No. 59-2 at 35.)  On August 31, 2019, a check for $438,905.57 was issued in Plaintiff's name, in the care of Defendant Goodwin.  (ECF No. 70 at 5 ¶ 19; ECF No. 59-2 at 37.)

On January 3, 2020, Plaintiff revoked the POA and alleged that Defendant Goodwin had misappropriated his funds.  (ECF No. 70 at 6 ¶ 25; ECF No. 59-2 at 38.)

Plaintiff initiated this action on April 13, 2020 and filed the Amended Complaint on May 13, 2020.  (ECF Nos. 1, 6.)  As the Recommendation points out, the "Amended Complaint does not identify the law under which Plaintiff brings his claims," and Judge Varholak construed Plaintiff's claims as follows: (1) claims to recover his retirement funds distributed to Defendant Goodwin and NEAP[2]; and a claim to recover funds from Defendant Chambers arising from the transfer of his vehicle titles.  (ECF No. 6.)

In response to the Amended Complaint, Defendant NEAP filed a Crossclaim against Defendant Goodwin for the amount of the retirement claims, and Defendant Chambers filed a Counterclaim against Plaintiff to recover funds purportedly owed to her under a loan agreement.  (*See* ECF Nos. 27, 43.)

On February 5, 2021, Defendant NEAP filed a Motion for Clerk's Entry of Default and Motion for Default Judgment Against Cross Claim Defendant Quinn Elizabeth Goodwin.  (ECF Nos. 68, 69.)  The Clerk of Court entered default as to Defendant Goodwin on NEAP's crossclaim on February 10, 2021.  (ECF No. 72.)

---

[2] Claim One is brought against Defendant NEAP and Claim Three is brought against Defendant Goodwin.  (ECF No. 6.)

On February 5, 2021, Defendant NEAP filed a Motion for Summary Judgment on Claim One and on its Crossclaim against Defendant Goodwin.  (ECF No. 70.)  Plaintiff thereafter filed a cross Motion for Summary Judgment on Claim One on April 21, 2021.  (ECF No. 98.)

On April 16, 2021, Plaintiff filed a separate Motion for Summary Judgment on Claim Two.  (ECF No. 92.)  Defendant Chambers filed a cross Motion for Summary Judgment as to this claim.  (ECF No. 93.)

On May 27, 2021, Plaintiff Filed a Motion to Dismiss Defendant Chambers' Counterclaim, which the Judge Varholak construed as a Motion for Summary Judgment.  (ECF Nos. 117, 121.)  Thereafter, on August 16 and 18, 2021, Plaintiff filed two Motions for Judgment on the Pleadings.  (ECF Nos. 145, 147.)

On August 26, 2021, Judge Varholak issued his Recommendation.  Defendant NEAP filed an Objection on September 6, 2021.  (ECF No. 152.)  Plaintiff filed an Objection on September 15, 2021.  (ECF No. 155.)

## II. LEGAL STANDARD

### A.      Rule 72(b) Review of a Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  Fed. R. Civ. P. 73(b)(3).  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the

parties' dispute." *Id.* In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

In the absence of a timely and specific objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

**B.      Summary Judgment**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

C.      **Default Judgment**

Default must enter against a party who fails to appear or otherwise defend a lawsuit.  Fed. R. Civ. P. 55(a).  Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party," in order to avoid further delay and uncertainty as to the diligent party's rights.  *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

Before granting a motion for default judgment, the Court must ensure that it has subject-matter jurisdiction over the action and personal jurisdiction over the defaulting defendant.  *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986).  Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant.  *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").  Further, a court "accords no deference to [a plaintiff's] conclusory and wholly unsupported allegations."  *Miller v. Kelly*, 2010 WL 4684029, at *4 (D. Colo. Nov. 12, 2010).

### III. ANALYSIS

Because Plaintiff is proceeding *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  The Court does not, however,

"supply additional factual allegations to round out a plaintiff's complaint," or "construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

## A.   Claim One

In Claim One, Plaintiff alleges that Defendant NEAP improperly handled his retirement account, and he seeks the benefits owed to him under his NEAP plan, *i.e.*, the entire balance of his retirement account.  (ECF No. 98 at 6.)  In the Recommendation, Judge Varholak concluded that Plaintiff's claim falls under 29 U.S.C. § 1132(a)(1)(B), which provides that "[a] civil action may be brought [ ] by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[3]  (ECF No. 151 at 10.)

When both parties in an ERISA case move for summary judgment, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."  *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

Moreover, in an ERISA claim for benefits, "the plan administrator's decision is reviewed by the court de novo unless the terms of the benefit plan give the administrator discretion to interpret the plan and award benefits."  *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1279 (10th Cir. 2020), *cert. denied*,  2021 WL

---

[3] Neither party objects to Judge Varholak's conclusion that Section 1132(a)(1)(B) applies to Claim One.

1602656 (Apr. 26, 2021) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If the plan fiduciaries are entitled to exercise such discretion, judicial review of the challenged denial of benefits is limited to a determination of whether the decision is arbitrary or capricious, not supported by substantial evidence, or erroneous on a question of law." *Sandquist v. U.S. W. Mgmt. Pension Plan*, 1992 WL 469739, at *1 (D. Colo. Sept. 17, 1992), *aff'd sub nom. Averhart v. US WEST Mgmt. Pension Plan*, 46 F.3d 1480 (10th Cir. 1994).

      1.    <u>Recommendation</u>

In the Recommendation, Judge Varholak recognized that there is conflicting ERISA caselaw regarding whether the interpretation of a POA, as it relates to claims determinations, should be done under a de novo or arbitrary and capricious standard of review. (ECF No. 151 at 12–13 (citing *Taylor v. Kemper Fin. Servs., Co.*, 199 WL 782027, at *3 (N.D. Ill. Sept. 27, 1999) & *Stets v. Securian Life Ins. Co.*, 2020 WL 1467395, at *4 (S.D.N.Y. Mar. 25, 2020)).) While Defendant NEAP argues that the Plan documents gave the plan administrator broad authority to interpret the plan, Judge Varholak noted that the POA in this action is not a Plan document and that neither party has identified any language in the plan that gives the plan administrator the discretion to interpret the authority granted in a POA. (*Id.*) Ultimately, however, Judge Varholak concluded that he did not need to determine what standard of review applied because he concluded that "even under the deferential standard of review, NEAP erred as a matter of law in dispersing Plaintiff's benefits to Defendant Goodwin."[4] (*Id.* at 13.)

---

[4] To the extent that Defendant NEAP argues that the Recommendation is erroneous because "[t]he Magistrate [Judge] made no clear finding on the issue of the proper standard of review," such an argument is unavailing because Judge Varholak applied the most deferential standard of review in analyzing Claim One. (ECF No. 151 at 13.)

Applying federal common law and Colorado law, Judge Varholak concluded that although the POA granted Defendant Goodwin general authority over Plaintiff's retirement account, that authority was limited by the special instruction requiring that "[f]urther Contributions to Quinn E Goodwin . . . be A[u]thorized in writing by Daniel R Goodwin."  (*Id.* at 15–16.)  He concluded that Defendant Goodwin did not have the authority to withdraw funds other than the $50,000 from Plaintiff's retirement account, and that Defendant NEAP violated its duty to Plaintiff by releasing the entirety of Plaintiff's account to her.  (*Id.* at 18.)  As such, Judge Varholak recommended that Plaintiff's Motion for Summary Judgment (ECF No. 98) be granted, that Defendant NEAP's Motion for Summary Judgment (ECF No. 70) be denied as to Claim One, and that Plaintiff's Motion for Judgment on the Pleadings as to Claim One (ECF No. 147) be denied as moot.

>     2.    <u>Defendant NEAP's Objections</u>

In its Objections, Defendant NEAP argues that "[t]here is no indication within the four corners of the POA that Plaintiff intended for the Special Instructions to modify the General Authority [provision of the POA]" and that Judge Varholak erred by concluding that the Special Instructions were intended to modify, rather than supplement, the General Authority provision.  (ECF No. 152 at 5–6.)  According to Defendant NEAP,

> [t]he reading of the POA that gives meaning to *all* of its provisions is that Plaintiff meant exactly what he indicated; [Defendant Goodwin] was to have General Authority over all subjects listed under the General Authority including his retirement plans, and, in addition, [Defendant Goodwin] could be paid $50,000 directly from NEAP (assuming that request could be accommodated) to pay for legal expenses.

(*Id.* at 6.)  Defendant NEAP further argues that "[t]he distribution of Plaintiff's account in Plaintiff's name by NEAP does not conflict with the Special Instructions because the Special Instructions do not limit what payments could be made in Plaintiff's name" and that "once payment was made in Plaintiff's name, it was up to [Defendant Goodwin] as Plaintiff's agent to pay herself the permitted $50,000 for legal expenses and no more, and to hold the balance for Plaintiff's benefit in her fiduciary capacity."  (*Id.* at 8.)

The Court disagrees.  Defendant NEAP's reading of the POA strains credulity and fails to strictly construe the POA's General Authority and Specific Instructions provisions.  *See People v. Stell*, 320 P.3d 382, 385 (Colo. App. 2013) ("Powers of attorney are strictly construed"); *Taylor*, 1999 WL 782027, at *2 (recognizing that federal common law of ERISA also holds that a power of attorney should be strictly construed). Among other things, Defendant NEAP's interpretation of the POA to give Defendant Goodwin full authority over the entirety of Plaintiff's retirement account is contradicted by Plaintiff's Special Instructions, which explicitly limits the amount that may be withdrawn to the "authority" of Defendant Goodwin.  (ECF No. 59-2 at 13 ("This Document is Authorize National Electrical Annuity Plan to Withdraw and Deposit in the Authority of Quinn Elizabeth Goodwin the Sum of 50,000.00 in the Bank of Quinn E Goodwin's Choice.").)  Likewise, the Special Instructions dictate that "[f]uture contributions to Quinn E Goodwin will be [a]uthorized in writing by Danial R Goodwin or [f]ull [b]alance [d]istributed to Quinn Goodwin upon Daniel Goodwin's death."  (ECF No. 59-2 at 13.)

As Judge Varholak correctly reasoned, Plaintiff's use of the Special Instructions section to limit the amount of funds that Defendant Goodwin could withdraw from

Plaintiff's retirement funds is "consistent with the purpose of the special instructions portion of the statutory form, which was created to allow a principal to modify general authority granted elsewhere in the document."  (*See* ECF No. 151 at 16–17 (citing Colo. Rev. Stat. § 15-14-741 cmt. ("The principal may modify any authority granted in the form by using the 'Special Instructions' section of the form."); Colo. Rev. Stat. § 15-14-738(2) (providing that "[u]nless the power of attorney provides otherwise, language in a power of attorney granting general authority with respect to retirement plans authorizes the agent to: (a) select the form and timing of payments and withdraw benefits from a plan")).)

Even applying a deferential standard of review, the Court concludes that Plaintiff's POA clearly indicated that Defendant Goodwin was only authorized to withdraw $50,000 from Plaintiff's retirement account.  Moreover, "[c]ase law is well-settled that when a third party knows that an agent's authority is contained in a power of attorney, that party has the duty to read the instrument carefully for limitations of such authority."  *Chicago Title Ins. Co. v. Progressive Hous., Inc.*, 453 F. Supp. 1103, 1107 (D. Colo. 1978).  As such, Defendant NEAP violated its duties to Plaintiff by allowing Defendant Goodwin to withdraw funds in excess of the approved $50,000.  *Cf. Taylor*, 1999 WL 782027, at *2–4 (concluding that because a power of attorney did not "reflect the clear and obvious intent" to grant the agent the power to change beneficiaries, defendant breached its fiduciary duties under ERISA by failing paying account proceeds to the wrong beneficiary).

Defendant NEAP further argues that Judge Varholak erred by failing to apply Colorado Revised Statute § 15-14-724(5), which provides that "[s]ubject to subsections

(1), (2), and (4) of this section, if the subjects over which authority is granted in a power of attorney are similar or overlap, the broadest authority controls."  (ECF No. 152 at 9.) However, Defendant NEAP cites no authority for its contention that § 15-14-724(5) requires a general authority provision within a POA to control notwithstanding a Special Instruction that limits that grant of general authority.  Such an interpretation is inconsistent with prevailing case law.  *Cf. Matter of Tr. of Franzen*, 955 P.2d 1018, 1021 (Colo. 1998) (en banc) ("Where a broadly worded power of attorney arguably authorizes acts that may be inconsistent with the principal's interests or intent, the instrument should not be interpreted as allowing the agent to undertake such acts in the absence of specific authority.").  Indeed, if the Court adopted Defendant NEAP's proposed statutory interpretation and interpreted every POA according to its broadest grant of authority— notwithstanding later limitations on that grant of authority contained within the same document—*any* limitation on a grant of authority within a POA would be rendered meaningless.

Moreover, Defendant NEAP's argument that the Magistrate Judge undermined the stated intent of the Uniform Power of Attorney Act and Colorado Power of Attorney act to protect third parties who act in good faith against wrongful acts by agents is unavailing.  (ECF No. 152 at 11 (citing Colo. Rev. Stat. § 15-14-719(3).)  After all, this is not a situation in which Defendant NEAP acted in accordance with a POA that later turned out to be void, invalid, or terminated.  To the contrary, Defendant NEAP's representatives allowed Defendant Goodwin to withdraw all of Plaintiff's retirement funds in a manner that clearly exceeds the scope of the authority granted to Defendant Goodwin under the POA.

14

Finally, Defendant NEAP argues that Judge Varholak erred by recommending that Plaintiff's Motion for Summary Judgment be granted in its entirety, arguing that "judgment in favor of Plaintiff should reflect that payment of $50,000 was authorized by the POA, and that NEAP is not liable to Plaintiff with respect to that amount." (ECF No. 152 at 12.) While Judge Varholak did not explicitly analyze the amount of the judgment that should be entered against Defendant NEAP, the Court agrees that Defendant NEAP should not bear responsibility for the $50,000 that Plaintiff authorized Defendant Goodwin to withdraw. Accordingly, when judgment is entered in favor of Plaintiff and against Defendant NEAP on Claim One, the amount of the judgment will be reduced by $50,000. This portion of Defendant NEAP's Objection is therefore sustained.

As set forth herein, the Court therefore overrules in part and sustains in part Defendant NEAP's Objection, adopts in part and modifies in part this portion of the Recommendation, grants Plaintiff's Motion for Summary Judgment (ECF No. 98), denies Defendant NEAP's Motion for Summary Judgment (ECF No. 70) as to Claim One, and denies as moot Plaintiff's Motion for Judgment on the Pleadings as to Claim One (ECF No. 147).

**B.    Claim Two, Defendant Chambers' Counterclaims, and Defendant NEAP's Crossclaim**

Judge Varholak also recommended that the Court: deny Plaintiff's Motion for Summary Judgment (ECF No. 92); deny Defendant Chambers' Motion for Summary Judgment (ECF No. 93); deny Plaintiff's "Motion for Dismiss of Counter Claim by Defendant Carol Smith/Chambers" (ECF No. 117); deny Defendant NEAP's Motion for Default Judgment (ECF No. 69) without prejudice to NEAP refiling a motion for default judgment that cures the deficiencies identified in the Recommendation; and deny

Defendant NEAP's Motion for Summary Judgment (ECF No. 70) as to the Crossclaim against Defendant Goodwin.  (ECF No.  151 at 18–28.)

No objections have been filed as to these portions of the Recommendation.[5]  As such, the Court reviews these portions of the Recommendation for clear error.  *See* Fed. R. Civ. P. 72 advisory committee note to 1983 amendments ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").  Because the Court finds that Judge Varholak's analysis is well-reasoned and without clear error, it will adopt these portions of the Recommendation in full.

Accordingly, the Court denies Defendant Chambers' Motion for Summary Judgment (ECF No. 93); denies Plaintiff's "Motion for Dismiss of Counter Claim by Defendant Carol Smith/Chambers" (ECF No. 117); denies Defendant NEAP's Motion for Default Judgment (ECF No. 69) without prejudice to NEAP refiling a motion for default judgment that cures the deficiencies identified in the Recommendation; and denies Defendant NEAP's Motion for Summary Judgment (ECF No. 70) as to the crossclaim against Defendant Goodwin.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

---

[5] On September 15, 2021, Plaintiff filed "Motion for Summary Judgment Briefing" (ECF No. 155), in which Plaintiff reiterates the same factual disputes that Judge Varholak discussed in the Recommendation for Claim Two and Defendant Chambers' counterclaims.  (ECF No. 151 at 18–25.)  He does not, however, explicitly object to any portions of the Recommendation; nor does he make any argument in support of his claims beyond parroting the relevant legal standard and stating broadly that he disputes the evidence that Defendant Chambers presented.  The Court therefore finds that Plaintiff has failed to meaningfully object to the portion of the Recommendation.  Moreover, even if the Court were to review Judge Varholak's analysis de novo, the Court would still affirm Judge Varholak's conclusions for the reasons set forth in the Recommendation.  (ECF No. 151 at 18–25.)

1.      Defendant NEAP's Objection (ECF No. 152) is OVERRULED IN PART and SUSTAINED IN PART, as set forth herein;

2.      Plaintiff's Motion of Summary Judgment Briefing (ECF No. 155) is OVERRULED;

3.      The Recommendation (ECF No. 151) is ADOPTED IN PART and MODIFIED IN PART as set forth above;

4.      Defendant NEAP's Motion for Default Judgment as to the Crossclaim (ECF No. 69) is DENIED WITHOUT PREJUDICE;

5.      Defendant NEAP's Motion for Summary Judgment (ECF No. 70) is DENIED as to Claim One and DENIED WITHOUT PREJUDICE as to the Crossclaim;

6.      Plaintiff's Motion for Summary Judgment as to Claim Two (ECF No. 92) is DENIED;

7.      Defendant Chambers' Motion for Summary Judgment as to Claim Two (ECF No. 93) is DENIED;

8.      Plaintiff's Motion for Summary Judgment on Claim One (ECF No. 98) is GRANTED;

9.      Plaintiff's Motion to Dismiss Counterclaim (ECF No. 117) is DENIED;

10.     Plaintiff's Motion for Judgment on the Pleadings (ECF No. 145) is DENIED;

11.     Plaintiff's Motion for Judgment on the Pleadings as to Claim One (ECF No. 147) is DENIED AS MOOT;

12.      At such time as the Clerk enters final judgment on all claims asserted against all parties in this action, the Clerk shall enter judgment in favor of Plaintiff and against Defendant National Electrical Annuity Plan as to Plaintiff's Claim One in the amount as set forth in Section III.A of this Order; and

13.    Judge Varholak is encouraged to consider the utility of scheduling in the near future a status conference or such other proceeding as he decides is appropriate to move this litigation forward.

Dated this 30th day of September, 2021.

BY THE COURT:

_____
William J. Martínez
United States District Judge

18